UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAQUAN SYDER,<br><br>      Plaintiff,<br><br>v.<br><br>EXPRESS SERVICES, INC d/b/a EXPRESS EMPLOYMENT PROFESSIONALS; COOPERATIVE LAUNDRY and JOHN DOES 1-5 AND 6-10,<br><br>      Defendants. | Civ. No. 20-11013 (KM) (ESK)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

      In 2018, Plaintiff Shaquan Syder was placed at Cooperative Laundry by Express Services, Inc., ("Express") a staffing agency. He worked there for just over three months when he injured his Achilles heel. After informing his supervisors of his injury, requesting an accommodation, and stating his intention of filing a workers' compensation claim, Syder was fired. He brings a variety of claims related to his firing, alleging that Express and Cooperative Laundry failed to accommodate his disability, but instead fired him, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12, and that he was wrongfully terminated in retaliation for his intention to file a worker's compensation claim. Express now moves to dismiss (DE 45),[1] arguing that Syder's complaint fails to state any viable claim as to Express.

---

[1]     For ease of reference, certain key items from the record will be abbreviated as follows:

    DE                =         Docket Entry in this Case

    3AC             =         Third Amended Complaint (DE 44)

    Mot.             =         Express's motion to dismiss (DE 45-1)

1

For the reasons set forth below, Express's motion to dismiss is **GRANTED in part and DENIED in part.**

## I. Background

The plaintiff, Shaquan Syder, began working as a laundry sorter at Cooperative Laundry[2] in December 2018. (3AC ¶ 5.) He was placed there by Express, a staffing agency. (*Id.* ¶ 8.) On March 24, 2019, Syder hit his leg on a barrel, injuring his Achilles heel. (*Id.* ¶ 12.) As a result of his injury, Syder had trouble walking, which made it difficult for him to perform his work as a laundry sorter. (*Id.* ¶ 13–14.) Syder informed a supervisor, Steve (last name unknown), of his injury and requested an accommodation in the form of lighter duty or a temporary change in position. (*Id.* ¶ 15–15b.) The next day, in increasing pain, Syder informed his head supervisor, Dave (last name unknown), of his injury and again requested an accommodation. (*Id.* ¶ 16–17e.) Syder also told Steve and Dave that he intended to file a worker's compensation claim. (*Id.* ¶ 20a-20d.) Shortly thereafter, Syder alleges, Cooperative Laundry informed Express of Syder's injury, accommodation request, and potential workers' compensation claim, and requested that Express end his assignment to Cooperative Laundry. (*Id.* ¶ 19c-19d.) Within the next day or two, Express informed Syder that he would no longer be working at Cooperative Laundry and would no longer have a relationship with Express. (*Id.* ¶ 19e.)

Syder originally filed this case in the Superior Court of New Jersey, Hudson County, Law Division, on August 20, 2020. (DE 1-1.) Express timely removed the case to this court, and it was determined that, *contra* the complaint, neither Express nor Laundry Cooperative is a citizen of New Jersey, so there is thus complete diversity of citizenship. (DE 1, 7, 8.) Express's first motion to dismiss was terminated by Syder's (first) Amended Complaint. (DE 10, 14.) Express's motion to dismiss the Amended Complaint was terminated

---

[2] Cooperative Laundry is the business name of KNY 26671, LLC, which apparently is not an LLC but an unincorporated association that is controlled by two New York citizens. (DE 7, 8.)

by Syder's filing of a Second Amended Complaint. (DE 17, 30, 31.) In April 2021, Express moved to dismiss the Second Amended Complaint. (DE 33.) I granted the motion to dismiss the Second Amended Complaint without prejudice to amendment. (DE 41, 42.) On September 23, 2021, Syder filed his Third Amended Complaint, which includes a number of new facts. (DE 44.)

The Third Amended Complaint includes seven Counts. Count 1 alleges disability discrimination under the NJLAD against both defendants based on Syder's firing. (3AC ¶ 41–42.) Count 2 alleges discrimination based on perception of disability against both defendants, also for Syder's firing. (*Id.* ¶ 43–44.) Count 3 alleges disability discrimination in a place of public accommodation against Cooperative Laundry. (*Id.* 45–46.) Count 4 alleges perception-of-disability discrimination in a place of public accommodation against Cooperative Laundry. (*Id.* ¶ 47–48.) Count 5 alleges failure to accommodate against both defendants. (*Id.* ¶ 49–53.) Count 6 alleges that Syder was wrongfully discharged in retaliation for threatening to file a worker's compensation claim. (*Id.* ¶ 54–55.) Finally, Count 7 requests equitable relief.[3] (*Id.* ¶ 56–64.) On October 7, 2021, Express moved to dismiss the claims brought against it in the Third Amended Complaint, *i.e.,* Counts 1, 2, 5, and 6. (DE 45.) Syder filed a brief in opposition and Express filed a reply. (DE 50, 51.) Although Cooperative Laundry was served (DE 47), it has not entered an appearance or made any filings in the case.

## II. Legal Standard

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc). Federal Rule of

---

[3] As noted in the previous opinion, Count 7 does not assert a standalone claim, but a form of relief. (DE 42 at 10–11.) It will therefore be dismissed with prejudice.

Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Discussion

I discuss Syder's claims against Express in order, grouping Counts 1 and 2, which seem to be pleaded in the alternative.[4]

#### i. Discrimination based on disability or perception of disability

The NJLAD forbids employers[5] from discharging employees because of disability or the perception of disability. N.J. Stat. Ann. § 10:5-12(a). To state a claim for discriminatory discharge under NJLAD, a plaintiff must allege facts which show: "(1) that he is a member of a protected class . . . (2) that he was otherwise qualified and performing the essential functions of the job; (3) that he was terminated; and . . . [(4)] that the challenged employment decision . . . took place under circumstances that give rise to an inference of unlawful discrimination." *Taylor v. Lincare*, 2016 WL 3849852 at *4 (D.N.J. July 15, 2016) (quoting *Joseph v. New Jersey Transit Rail Operations Inc.*, 586 Fed. App'x 890, 892 (3d Cir. 2014)); *Gadbois v. State*, 2009 WL 1310973 at *5 (App. Div. May 13, 2009). "[F]or claims of disability discrimination, the first element of the prima facie case, that plaintiff is in a protected class, requires plaintiff to demonstrate that he or she qualifies as an individual with a disability, or who

---

[4] Federal Rule of Civil Procedure 8(d) allows claims to be pleaded in the alternative.

[5] It is unclear from the complaint exactly what Syder's relationship with Express was. Syder contends that he was "a dual, special and/or joint employee" of Cooperative Laundry and Express. (3AC ¶ 8.) Express does not deny that it was Syder's employer, so I consider the issue conceded.

4

is perceived as having a disability, as that has been defined by statute." *Victor v. State,* 203 N.J. 383, 410 (2010). Here, Syder plausibly alleges, and Express does not dispute, that his injury rendered him disabled (or perceived to be disabled), that he was otherwise qualified, and that he was terminated.[6]

The parties contest whether Express terminated Syder in circumstances that give rise to an inference of unlawful discrimination. In the Third Amended Complaint, Syder pleads few facts regarding Express (as opposed to Cooperative Laundry). Syder alleges, without detail, that employees at Cooperative Laundry informed Express that Syder had been injured and had requested an accommodation, and that those Cooperative employees told Express to end Syder's assignment at Cooperative Laundry. (3AC ¶ 19c–19d.) Within two days of learning from Cooperative Laundry of Syder's injury, Express informed Syder that Express "d[id]n't require his assistance" any longer. (*Id.* ¶ 24.) The plausibility of Syder's claim thus relies solely on temporal proximity: *i.e.,* that the termination occurred shortly after his injury and request for accommodation. Syder provides no other indicia of discrimination, such as statements regarding his disability by his supervisors.

Although it is a close issue, I find that Syder has plausibly alleged that Express terminated him because of his disability. Only a few days passed Syder's injury and his termination, and no other explanation appears. That temporal proximity lends plausibility to his claim that both Cooperative Laundry and Express terminated him because of his disability or the perception that he had become disabled. To be sure, discovery may undercut that theory or demonstrate that Syder was terminated for other reasons (or was not terminated at all). As things stand, however, I find that facts pleaded in his

---

[6] Express includes an affidavit purporting to show that it assigned Syder other jobs after he was terminated from the position at Cooperative Laundry. As I noted in my last opinion, such evidence is not appropriate at the motion to dismiss stage and I will not consider it. (DE 42 at 8 n.3)

5

Third Amended Complaint are sufficient to survive Express's motion to dismiss and therefore I decline to dismiss Counts 1 and 2.

### ii. Failure to accommodate

Syder alleges that his Express failed to accommodate his disability, and indeed failed even "to participate in the interactive process" in an effort to reach such an accommodation. *Victor v. State*, 203 N.J. 383, 416 (2010) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319 (3d Cir. 1999)). The elements of such a claim are that "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* (quoting *Taylor*, 184 F.3d at 319–20).

Syder's claim against Express fails because Syder alleges that he requested an accommodation from Cooperative Laundry, not Express. The only communication between Express and Syder that is mentioned in the complaint is the phone call terminating him. Because Syder does not allege that he requested some type of accommodation from Express – for example that Express assign him only to employers offering sedentary or light work – he cannot state a claim for failure to accommodate against Express.[7] Count 5 is therefore dismissed as to Express.

### iii. Workers' Compensation Retaliation

Syder also brings a claim that Express and Cooperative Laundry retaliated against him for stating that he would file a workers' compensation claim. To state a claim for workers' compensation retaliation, Syder must plausibly allege that that (1) he made or attempted to make a claim for workers'

---

[7] In fact, it is unclear that Express was even in the position to provide Syder with an accommodation in connection with his duties at Cooperative Laundry. He alleges in his Third Amended Complaint that it was Cooperative Laundry, not Express, that controlled his day-to-day conditions of employment. (3AC ¶ 9–9a.)

6

compensation and (2) he was discharged in retaliation for attempting to make that claim. *Cerracchio v. Alden Leeds, Inc.*, 223 N.J. Super. 435, 442–43 (App. Div. 1988). A plaintiff is "not required to show that he physically filed a claim petition," *id.* at 442, but he must in some manner claim or attempt to claim his workers' compensation benefits. *See id.*, 223 N.J. Super. at 443 (retaliation rights implicated where plaintiff notified his employer of his injury and asked about the procedure to have hospital bills paid); *Carter v. AFG Industries, Inc.*, 344 N.J. Super. 549, 555 (App. Div. 2001) (rights implicated where plaintiff attended medical appointments for a work-related injury); N.J. Stat. Ann. § 34:15-39.1 (statutory provision barring retaliation for claiming workers' compensation, and which states that it applies only where an employee "has claimed or attempted to claim workmen's compensation benefits").

Express challenges the first element and argues that Syder never "attempted to" file a workers' compensation claim before his termination. (Mot. at 11–12.) The law, however, does not require that Syder actually file a claim, or even that he start filling out the claim paperwork. Syder alleges that he informed his supervisors that he "needed to file a claim." (3AC ¶ 20a.) Within two days of Syder's informing his supervisors that he intended to file a claim, Syder was fired.[8] Syder's Third Amended Complaint plausibly alleges that he took the first step toward filing a workers' compensation claim by informing his supervisors of his intention to do so, giving them a plausible reason to discharge him in retaliation.

On the second element, the plaintiff must plausibly allege that there was a causal relationship between the attempted filing of a workers' compensation claim and the discharge. In analyzing a retaliatory discharge claim under New Jersey law, "courts look to correlative federal law to supply the relevant

---

[8] Express finds it unlikely that Syder managed to file a workers' compensation claim between the time of his injury and the time of his discharge. (Mot. at 12.) That is true, and may be taken as an example of why the law does not require a plaintiff to actually file a claim. Such a rule would incentivize employers to discharge injured employees quickly, before they had time to file a claim, a result contrary to public policy.

7

standards for evaluating the claim." *Morris v. Siemens Components, Inc.*, 928 F. Supp. 486, 493 (D.N.J. 1996) (citing *Abrams v. Lightolier,* Inc., 50 F.3d 1204, 1212 (3d Cir.1995)). Federal courts have held that in order to establish causation, a plaintiff usually must allege either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 297 (3d Cir. 2007) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997) and *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997)).

Here, as noted with regard to Syder's disability discrimination claim, there is an "unusually suggestive temporal proximity" between Syder's informing his supervisors of his intent to file a workers' compensation claim and his allegedly retaliatory discharge. Express cites one case in which a court dismissed a wrongful discharge claim and found that the plaintiff had not properly alleged causation. (Mot. at 11 (citing *Davis v. Supervalu, Inc.*, No. CIV. 13-414 JBS/JS, 2013 WL 1704295 (D.N.J. Apr. 19, 2013)).) In that case, however, a year had passed between the filing of a workers' compensation claim and the allegedly wrongful discharge. *Davis*, 2013 WL 1704295, at *6. The Third Circuit has held that gaps of two days or ten days were short enough to support a *prima facie* showing of causation. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003). Here, I find that the two-day gap between Syder's statement to his supervisors that he intended to file a claim and his discharge is sufficient to support a plausible allegation of causation.

There is one additional complication, though it is not raised by the parties. Syder's workers' compensation claim would have been filed against Cooperative Laundry, not Express. Syder alleges, however, that his supervisors at Cooperative laundry informed Express of his intention to file a workers' compensation claim and induced Express to discharge him in retaliation. (3AC ¶ 20b.) I find Syder has plausibly stated a retaliatory discharge claim against

8

Express. The workers' compensation statute states that "It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from *such* employer. N.J. Stat. Ann. § 34:15-39.1 (emphasis added). Although a literal reading of the statute would lead to the conclusion that it is permissible for employers to terminate employees who made workers' compensation claims related to their second jobs, New Jersey courts have long interpreted this statute in line with a broader public policy favoring the compensation of injured workers. *See Lally v. Copygraphics*, 85 N.J. 668, 670–71 (1981). The public policy in favor of injured worker compensation seeks to discourage any and all retaliation against a worker for filing a workers' compensation claim, even if the claim is filed against a different employer. Many workers in New Jersey work two or more jobs. If a worker is discharged by employer B because employer B learns that the worker filed a compensation claim against employer A after being injured on the job, that discharge interferes with the worker's ability to obtain compensation for injury. This logic is even stronger in the joint employment context, where the two employers, in this case Express and Cooperative Laundry, communicate frequently and the employee works for both simultaneously. No employer should be able to avoid liability by having another employer do its retaliatory work for it.

     In short, I find that Syder has plausibly stated a claim for wrongful discharge because he alleged that he was terminated by Express two days after his supervisors at Cooperative Laundry informed Express of his desire to file a workers' compensation claim. I therefore decline to dismiss Count 6.

## IV. Conclusion

Express's motion to dismiss (DE 45) is therefore GRANTED in part and DENIED in part. Specifically, the motion is GRANTED as to Counts 5 and 7 and DENIED as to Counts 1, 2, and 6. An appropriate order follows.
Dated: February 24, 2022.

/s/ Kevin McNulty
_____
Kevin McNulty
United States District Judge