UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAQUAN SYDER,<br><br>                              Plaintiff,<br><br>v.<br><br>EXPRESS SERVICES, INC d/b/a EXPRESS EMPLOYMENT PROFESSIONALS; COOPERATIVE LAUNDRY and JOHN DOES 1-5 and 6-10,<br><br>                            Defendants. | Civ. No. 20-11013 (KM) (ESK)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

      This matter comes before the Court on the motion of the plaintiff, Shaquan Syder, for an order setting a date to conduct a proof hearing regarding the amount of damages to be awarded as against defendant KNY 26671, LLC d/b/a Cooperative Laundry ("Cooperative Laundry"). (DE 72.)[1] Although the clerk has entered default, a default judgment has not yet been entered. I will therefore treat the plaintiff's motion as one for entry of a default judgment, and will **GRANT** it. As for damages, the Court will require submission of proofs, and a hearing will be convened if necessary.

    **I.**    **Background**

      A detailed factual background can be found in my recent opinion in this case concerning Cooperative Laundry's codefendant. (DE 52.) *See Syder v. Express Servs., Inc.,* No. CV2011013KMESK, 2022 WL 577964, at *1 (D.N.J. Feb. 24, 2022) (cited as "Op."). In short, Syder alleges that he was

---

[1]     Certain key citations to the record will be abbreviated as follows:

        DE = Docket entry in this case
        Compl. = Third amended complaint (DE 44)

1

placed at Cooperative Laundry by Express Services, Inc. ("Express Services"), a staffing agency. He alleges that he was fired from his temporary position at Cooperative Laundry after suffering an injury to his heel or Achilles tendon and requesting an accommodation. (Compl. ¶¶7, 11, 19.) Syder alleges that Express Services also terminated its relationship with him following that injury. (*Id.*) In his third amended complaint, which is the operative complaint for purposes of this motion, Syder brought claims against both Cooperative Laundry and Express Services for firing him rather than accommodating his disability, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12, and for retaliating against him for his intention to file a worker's compensation claim. (Compl. ¶¶41-55.)

In February 2022, the Court granted in part and denied in part a motion to dismiss by Express Services. Op. at *1. Apparently the matter settled; in January 2023, pursuant to a joint stipulation between Syder and Express Services, all claims against Express Services were dismissed with prejudice. (DE 75.)

Cooperative Laundry, for its part, has failed to appear in the matter, despite having been served with the third amended complaint in March 2021. (DE 47.) Pursuant to Syder's request, the Clerk entered default as to Cooperative Laundry in July 2022. (DE 62, entry after DE 63.) In November 2022, Syder filed the current motion for a proof hearing regarding the amount of any damages award. (DE 72.)

## II.     Legal standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before granting a motion for a default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of

action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). By contrast, the Court need not accept the plaintiff's legal conclusions, as a party in default does not admit mere conclusions of law. *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)).

If the allegations of the complaint support the plaintiff's entitlement to relief, the Court then must evaluate the following three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether the defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (2000).

### III. Discussion

I begin by evaluating the sufficiency of the factual allegations. Although Syder raises several distinct legal theories in the third amended complaint, all of them relate to a single harm Syder suffered: he was fired based on his disability and request for an accommodation. That harm is best captured by Count 1 of the third amended complaint, which raises a claim under the NJLAD for employment discrimination.

#### A. NJLAD employment discrimination

The NJLAD forbids employers from discharging employees because of disability or the perception of disability. N.J. Stat. Ann. § 10:5-12(a). To state a claim for discriminatory discharge under NJLAD, a plaintiff must allege facts which show: "(1) that he is a member of a protected class . . . (2) that he was otherwise qualified and performing the essential functions of the job; (3) that he was terminated; and . . . [(4)] that the challenged employment decision . . . took place under circumstances that give rise to an inference of unlawful

discrimination." *Taylor v. Lincare,* No. 15-6284, 2016 WL 3849852 at *3 (D.N.J. July 15, 2016) (quoting *Joseph v. New Jersey Transit Rail Operations Inc.*, 586 Fed. App'x 890, 892 (3d Cir. 2014). "[F]or claims of disability discrimination, the first element of the prima facie case, that plaintiff is in a protected class, requires plaintiff to demonstrate that he or she qualifies as an individual with a disability, or who is perceived as having a disability, as that has been defined by statute." *Victor v. State,* 203 N.J. 383, 410 (2010).

As I determined in my previous opinion, Syder has plausibly alleged that his injury rendered him disabled (or perceived to be disabled), that he was otherwise qualified to work at Cooperative Laundry, and that he was terminated. Op. at *2-3. I also concluded, based on Syder's allegations, that an inference of unlawful discrimination could be drawn. (*Id.*) Syder alleges that he reported his injury to his supervisors at Cooperative Laundry and requested an accommodation on March 25, 2019.[2] (Compl. ¶¶16, 17.) Those supervisors then informed Express Services of Syder's injury and accommodation request and told Express to end Syder's assignment with Cooperative Laundry. (*Id.* ¶19.) Express informed Syder a day or two later that his assignment at Cooperative Laundry and his relationship with Express Services were both terminated. (*Id.*) Given the temporal proximity between his termination and his injury/accommodation request, I determined that Syder's claim of discrimination is plausible.

An issue I did not deal with in my previous opinion is the nature of Syder's triangular relationship with Express Services and Cooperative Laundry. A claim for employment discrimination under the NJLAD requires that there be an employer/employee relationship. *See Thomas v. Cnty. of Camden,* 386 N.J. Super. 582, 594 (App. Div. 2006). Because Express Services did not deny that it was Syder's employer in its motion to dismiss, I treated the issue as having

---

[2] According to Syder, there were various reasonable accommodations that Cooperative Laundry could have made for him while his injury was healing, such as temporarily allowing him to work as a laundry washer, rather than sorter, so that he would not have to walk around as much. (Compl. ¶19.)

been conceded. Op. at *2, n.5. Here, however, Cooperative Laundry has not conceded the issue, as it has failed to appear. I therefore must consider whether the allegations, taken as true, support a conclusion that Cooperative Laundry was Syder's employer within the meaning of the NJLAD.

The NJLAD's definition of the terms "employee" and "employer" are broad. *Thomas,* 386 N.J. Super. at 594. Courts in New Jersey employ a twelve-factor test, consistent with principles of agency law, to determine whether a worker is an employee under the NJLAD:

> "(1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation-supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the 'employer;' (10) whether the worker accrues retirement benefits; (11) whether the 'employer' pays social security taxes; and (12) the intention of the parties."

*Thomas, supra.* (Internal citations and quotations omitted.) The most important factor is the first: the employer's right to control the means and manner of the worker's performance. *Id.* (citing *Chrisanthis v. County of Atl.*, 361 N.J. Super. 448, 455 (App. Div. 2003)).

Claims brought under the NJLAD are generally subject to the same analysis as claims brought under Title VII of the 1964 Civil Rights Act ("Title VII"). *Schurr v. Resorts Int'l Hotel, Inc.,* 196 F.3d 486, 498 (3d Cir. 1999); *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 600, 626 A.2d 445, 452 (1993). In the context of Title VII, "[t]wo entities may be 'co-employers' or 'joint employers' of an employee." *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015) (citing *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997). "Indeed, at common law, one could be a 'dual servant acting for two masters simultaneously' or a 'borrowed servant' who by virtue of being 'directed or permitted by his master to perform services for another may become the

servant of such other.'" *Faush, supra* (quoting *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1349 (3d Cir. 1999).

In this case, the allegations are sufficient to show that Syder was Cooperative Laundry's employee under the NJLAD. Syder alleges that Cooperative Laundry's employees "supervised, controlled and oversaw [his] day-to-day work." (Compl. ¶9.) In particular, those employees "controlled what hours [he] worked, the amount [he] was compensated, [and] what position [he] worked in." (*Id.*) They also had the authority to discipline him. (*Id.*) In addition, when he worked at Cooperative Laundry's facilities, he used their equipment. (*Id.*)

Accordingly, although he was apparently dispatched by Express Services (and perhaps directly paid by Express as well), Syder worked under the supervision of Cooperative Laundry managers, who controlled much of the details of his employment. Syder has therefore alleged that he had a common law employment relationship with Cooperative Laundry, which therefore is potentially liable for employment discrimination. *See Fuash*, 808 F.3d at 215-220 (holding that a worker employed by a temporary staffing agency could be the defendant corporation's employee under Title VII where the defendant's employees supervised the worker and controlled his daily activities).

Having found that Syder stated a cause of action for employment discrimination under the NJLAD, I need not address the alternative legal theories raised in the complaint, which seek the same relief. Instead, I turn to the question of whether default judgment is warranted under the Third Circuit's three-factor test. *See Chamberlain*, 210 F.3d at 164 (requiring courts to evaluate the following three factors before granting default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether the defendant's delay is due to culpable conduct.")

### B. Three-factor test

As to the first factor, whether Syder would suffer prejudice if default judgment is denied is hard to say. Syder and Express Services jointly stipulated to the dismissal of Syder's claims, and it may be that they executed a settlement agreement that entitled Syder to receive damages. If Syder was made whole by these damages, then recovery from Cooperative Laundry is unnecessary. For the time being, however, I will assume that Syder was not made whole. If default judgment is granted, Syder will be ordered to provide proof of his damages, which will include proving the amounts, if any, recovered from Express Services.

Moving on to the second factor, I am not aware of any meritorious defenses that Cooperative Laundry may possess. I am constrained to conclude that they have none. *See Teamsters Pension Fund of Philadelphia and Vicinity v. American Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that defendant has no litigable defenses where defendant failed to answer or otherwise defend itself).

Finally, as to the third factor, Cooperative Laundry's culpable conduct is presumed, as "[t]here is nothing before the Court to show that the Defendant[s'] failure to answer was not willfully negligent." *Id.*; *see also Prudential Ins. Co. of America v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. February 27, 2009) (finding that defendant's failure to file answer or otherwise appear evinces culpable conduct). Based on these factors, I find that the entry of a default judgment is appropriate.

### C. Damages

Fed. R. Civ. P. 55(b)(2) permits the Court to conduct a hearing to "determine the amount of damages" owed by a party in default. Syder's motion seeks such a hearing. First, however, I will require that Syder submit documentary evidence supporting his request for a specified amount of damages from Cooperative Laundry. This evidence should include proof of any amounts recovered from Express Services (which may be sealed if the

7

settlement is confidential). If necessary, following the submission of documentary evidence, the Court will convene a hearing.

## IV. Conclusion

The motion for default judgment against defendant Cooperative Laundry is **GRANTED**. Within 30 days, the plaintiff shall submit an affidavit detailing his damages, attaching such evidence as he may possess. The terms and amounts received under any settlement between the plaintiff and defendant Express Services shall be disclosed, under seal if necessary. An appropriate order will issue.

Dated: March 29, 2023

/s/ Kevin McNulty

_____
**KEVIN MCNULTY**
**United States District Judge**